IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| KENNETH JOHN SNIDER, | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:12-cv-310 |
| | § | |
| CITY OF MISSION, FORMER MISSION | § | (JURY REQUESTED) |
| POLICE CHIEF LEO LONGORIA, | § | |
| FORMER POLICE OFFICER RANDY GARZA, | § | |
| POLICE OFFICER CHRISTOPHER PILAND, | § | |
| POLICE OFFICER SHANE DE LA GARZA, | § | |
| POLICE OFFICER CHARLES LOPEZ, and | § | |
| POLICE OFICER OMAR DIAZ de VILLEGAS | § | |
| *Defendants.* | § | |

PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT
AND DEMAND FOR JURY TRIAL

TO THE HONORALBE JUDGE OF SAID COURT:

COMES NOW, Plaintiff KENNETH JOHN SNIDER, and files this First Amended Original Complaint and Demand for Jury Trial, and for cause thereof would show the Court as follows:

I.

INTRODUCTION

1. This is a civil action for damages brought for personal injuries and deprivation of civil rights under the Constitution and laws of the United States and The State of Texas.

2. This tragic case arises from an arbitrary and irresponsible series of actions on the part of Defendants that ended with the wrongful detention, arrest, brutalization and incarceration of Plaintiff.

II
PARTIES

3. Plaintiff, Kenneth John Snider, is a U.S. Citizen who resides in Mission, Hidalgo County, Texas. He brings this suit in his individual capacity.

4.  Defendant, City of Mission, is a duly incorporated home rule City and Political Subdivision of the State of Texas, and is capable of being sued in this Court.  Defendant, City of Mission, is responsible for the policies, practices, and customs implemented through the Mission Police Department (hereinafter called "MPD") as well as the hiring, training, supervision, control and discipline of its police officers.  Defendant, City of Mission, is and was the employer of the police personnel named herein as individual Defendants and was also the employer of the police personnel.  The City of Mission has been served by serving the City Secretary, Anna Carrillo, at 1201 E. 8th Street, Mission, Texas 78572 and has filed an Answer.  Therefore, no service is necessary.

5.  Defendant, former Mission Police Chief Leo Longoria, is a resident of Mission, Hidalgo County, Texas.  At all times material to this suit, and based on information and belief, he was responsible for the Mission Police Department and its officers.  Based on information and belief, he was the final policy maker for the City of Mission with respect to police policies and practices at the time of the incident made the basis of this lawsuit.  Alternatively, he was a high ranking member of the Mission Police Department, played a significant role in the making of such policies and was responsible for the Mission Police Officers compliance with minimal Federal and State Constitutional Standards.  The City of Mission, through their city council and city manager, entrusted the police chief with responsibility for the discipline of the officers named herein.  Each of the acts complained arises from the conduct of Defendant while acting under color of State law, and was committed within the scope of his employment with the MPD.  Defendant former Mission Police Chief Leo Longoria may be served at *his place of residence or wherever he may be found.*

6.  Defendant, former Officer Randy Garza #0486, was an officer or employee of the MPD and who, based on information and belief, was involved in the wrongful entry into Plaintiff's house; the

wrongful detention, arrest, brutal beating, assault and wrongful incarceration of Plaintiff; and the subsequent investigation into the incident made the basis of this lawsuit. When any reference is made to "police officers", that reference is intended to include Former Officer Randy Garza. Former Officer Randy Garza may be served at his place of residence _1501 Shary Lee, Mission, Texas 78572 or wherever he may be found._

7.   Defendant, Officer Christopher Piland #0284, is an officer or employee of the MPD and who, based on information and belief, was involved in the wrongful entry into Plaintiff's house; the wrongful detention, arrest, brutal beating, assault and wrongful incarceration of Plaintiff; and the subsequent investigation into the incident made the basis of this lawsuit.  Officer Christopher Piland may be served at _Mission Police Department, 1200 E. 8th St., Mission, Texas 78572 or wherever he may be found._

8.   Defendant, Officer Shane de la Garza #0464, is an officer or employee of the MPD and who, based on information and belief, was involved in the wrongful entry into Plaintiff's house; the wrongful detention, arrest, brutal beating, assault and wrongful incarceration of Plaintiff; and the subsequent investigation into the incident made the basis of this lawsuit.  Officer Shane de la Garza may be served at _Mission Police Department, 1200 E. 8th St., Mission, Texas 78572 or wherever he may be found._

9.   Defendant, Officer Charles Lopez #0282, is an officer or employee of the MPD and who, based on information and belief, was involved in the wrongful entry into Plaintiff's house; the wrongful detention, arrest, brutal beating, assault and wrongful incarceration of Plaintiff; and the subsequent investigation into the incident made the basis of this lawsuit.  Officer Charles Lopez may be served at _Mission Police Department, 1200 E. 8th St., Mission, Texas 78572 or wherever he may be found._

10. Defendant, Officer Omar Diaz de Villegas #0505, is an officer or employee of the MPD and who, based on information and belief, was involved in the wrongful entry into Plaintiff's house; the wrongful detention, arrest, brutal beating, assault and wrongful incarceration of Plaintiff; and the subsequent investigation into the incident made the basis of this lawsuit.  Officer Omar Diaz de Villegas may be served at _Mission Police Department, 1200 E. 8th St., Mission, Texas 78572 or wherever he may be found._

11. Plaintiff sues each and all Defendants (except City of Mission) in both their individual and official capacities.

12. At all times material to this complaint, Defendants acted under color of the statutes, customs, ordinances, and usage of the State of Texas, City of Mission and the Mission Police Department.

III

JURISDICTION AND VENUE

13. Jurisdiction is proper in this court pursuant to 42 U.S.C. Section 1983.   Venue is proper in this Court because the incident occurred in Mission, Hidalgo County, Texas.

IV

FACTS

14. On or about December 20, 2011, police officers of the Mission Police Department responded to what was, essentially, a noise complaint at Plaintiff's home involving unwanted guests.  Upon arrival, the police officers were advised that the unwanted guests had left, and that no police assistance was needed.  The police officers were also advised that a minor physical altercation had occurred outside the home; however, that situation had also been resolved prior to the police officers arrival at the home. Neither the noise complaint nor the minor physical altercation constituted a felony, family violence, or ongoing danger which would have allowed a warrantless arrest under the provisions of the Texas Code of Criminal Procedure.

4

15. Despite being advised that all issues had been resolved and that their presence was not needed at the premises, the police officers refused Plaintiff's request to leave the premises.   The police officers surrounded Plaintiff's home and proceeded to harass, bully, and intimidate an otherwise peaceful gathering of friends and family.

16. After repeatedly and unsuccessfully demanding that Plaintiff exit his residence, the police officers forced their way inside the residence by physically trampling over and shoving aside Plaintiff's girlfriend.  On forcing their way into the residence, the police officers immediately began to pepper spray, assault, beat and strike Plaintiff, causing serious bodily injuries.

17. After beating Plaintiff to the point that Plaintiff could not breathe due to the accumulation of blood in his mouth, nose, and lungs, the police officers began escorting a now hand-cuffed Plaintiff out the door of his residence.   At that time, while Plaintiff was still hand-cuffed, Officer Omar Diaz de Villegas proceeded to strike Plaintiff in the face with a closed fist.   The closed fist attack upon Plaintiff occurred while Plaintiff's hands were hand-cuffed behind his back and Plaintiff had no means which to cover or otherwise protect himself.

18. After pepper spraying, assaulting, beating, hand-cuffing and then striking Plaintiff in his face with a closed fist, the police officers began to gloat, boast, and rejoice over their beating of the Plaintiff in the presence of the guests and family members who remained at the home.   Thereafter, the Plaintiff was taken to the Mission Police Department, and subsequently, Hidalgo County Jail, where he spent more than 45 days under incarceration with an excessive bail set at $400,000.00 (the bail was reduced by 90% to at the end of the 45 days on a Writ of Habeas Corpus).

19. Charges related to Plaintiff's alleged "assault on a police officer" were subsequently dismissed by the Hidalgo County District Attorney's Office.  Upon presenting the case to the Hidalgo County District Attorney's Office, Defendants failed to disclose reports regarding the closed fist striking of Plaintiff subsequent to Plaintiff being hand-cuffed.   This information was not disclosed until

immediately prior to Officer Omar Diaz de Villegas' deposition in May, 2013, one and half years after the incident. Based upon information and belief, neither the City of Mission nor the MPD has presented this information to the Hidalgo County District Attorney's Office or any State or Federal law enforcement agency outside the MPD, despite the fact that supervisors and high ranking personnel within the MPD have been aware of the incident since immediately after its occurrence. No disciplinary or other action was taken against Officer Omar Diaz de Villegas, despite the fact that his closed fist strike to plaintiff's face, while plaintiff was handcuffed, is in direct violation of the written policies of the MPD.

20. The wrongful entry into Plaintiff's house; the wrongful detention, arrest, and brutalization of Plaintiff; subsequent attempts to cover the assault of Plaintiff while Plaintiff was handcuffed; the failure of the Mission Police Department to conduct any internal affairs investigation or discipline the police officers involved; the failure to present the information regarding the assault on an unarmed and handcuffed person to any outside agency; the refusal to discipline an officer for direct violations of written policies; and the lack of meaningful oversight, training, or discipline of the involved police officers evidences a policy, practice, or custom of the MPD and the City of Mission, and constitutes a violation and callous disregard of Plaintiff's rights as a citizen of the United States of America and the State of Texas for which Plaintiff now sues.

V

COUNT 1

Federal Civil Rights Claims Against the Officers of the Mission Police Department

21. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs. The police officers of the Mission Police Department made an unlawful entry into Plaintiff's house; wrongful detention, arrest, brutalization, and assault against Plaintiff; and a wrongful incarceration of Plaintiff.  The actions of the Mission Police Officers were inspired by malice, rather than merely

6

careless or unwise zeal, so that their conduct amounted to an abuse of official power that "shocks the conscience". *Checki v. Webb,* 785 F.2nd 534, 538 (5th Cir. 1986); *County of Sacramento v. Lewis,* 523 U.S. 833 (1988).

22. The actions of the Mission Police Officers crossed the Constitutional line that would make their conduct actionable under 42 U.S.C. §1983.  No reasonable police officer would have engaged in the intentional, dangerous, and reckless conduct engaged in by the Mission Police Officers as set forth above.  The actions of the Mission Police Officers constitute an intentional and/or reckless assault against Plaintiff.  The actions of the Mission Police Officers occurred under color of law. The actions of the Mission Police Officers deprived Plaintiff of his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

23. As a direct and proximate cause of the acts of Defendants, Plaintiff suffered physical injury, loss of income, medical damages, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

VI

COUNT 2

Texas Law Claims against the Officers of the Mission Police Department

24. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs. Count 2 is raised against the officers of the Mission Police Department for liability under Texas law for the assault, wrongful detention, false imprisonment, and deprivation of Plaintiff's rights under state law.  The officers acted in concert and are jointly and severally liable for Plaintiff's damages as set forth herein.

25. Assault.  Plaintiff alleges that each of the police officers and former police officers of the Mission Police Department acted jointly and in concert to perpetuate an assault against Plaintiff.  In this

regard, Plaintiff would show that Defendants acted intentionally, knowingly, or recklessly; the Defendants made contact with Plaintiff's person; and the Defendants' contact caused bodily injury to the Plaintiff.  Plaintiff would show that the assault committed by the police officers and former police officers was not within their discretionary authority. The wanton assault of Plaintiff violated clearly established law.  *Harlow v. Fitsgerald,* 457 US 800, 818-819, 102 S.Ct. 2727, 2738-2739, 73 L.Ed. 2d 316 (1982).  *Grandstaff v. City of Borger, Texas,* 767 F.2d 161, 168.  When the police officers and former police officers of Mission Police Department wrongfully entered plaintiff's home and wrongfully detained, assaulted, arrested, and imprisoned Plaintiff, the police officers and former police officers were not acting in good faith in the performance of their discretionary duties.

26. <u>Trespass.</u>  Plaintiff would show that the police officers of the Mission Police Department made an unauthorized entry into Plaintiff's home, thereby causing injury to Plaintiff's right of possession.  At all times material hereto, the Plaintiff had the lawful right to possess the property, the police officers entered the property without a warrant, without consent, and without any legal authority to make entry onto Plaintiff's property.   Under Texas law, every unauthorized entry onto property is considered a trespass, and it is presumed that some injury resulted from the trespass even if damages are nominal.  *Johnson v. Phillips Pet. Co.,* 93 SW 2d 556, 558-559 (Tex.App.—Amarillo 1936, no writ).  As a result of the trespass, Plaintiff is entitled to recover actual damages, consequential damages, mental anguish damages, nominal damages, and exemplary damages. When the police officers of Mission Police Department wrongfully entered plaintiff's home and wrongfully detained, assaulted, arrested, and imprisoned Plaintiff, the police officers were not acting in good faith in the performance of their discretionary duties. The wanton and oppressive actions of the police officers and former police officers were not within their discretionary authority and those actions violated clearly established law.

8

27. <u>False Imprisonment.</u>  Plaintiff would show that each of the police officers of the Mission Police Department is liable under Texas law for false imprisonment.  Plaintiff was willfully detained by the Defendants, the detention was without the Plaintiff's consent; and the detention was without legal authority or justification.  Plaintiff would show that he was arrested without a warrant and, therefore, the burden was upon the Defendants to show legal authority for the arrest.  *Hicks v. Mathews,* 261 SW 2d 207, 210 (Tex. App—Beaumont, 1953), ref'd on other grounds, 266 SW 2d 846 (Tex. 1954); *Castillo v. Canabati,* 152 SW 2d 785, 786-787 (Tex. App – San Antonio, 1941, writ ref'd); *Wal-Mart Stores v. Odem,* 929 SW 2d 513, 519 (Tex. App—San Antonio, 1996, writ den'd).  As a result of Defendants' wrongful detention and false imprisonment of Plaintiff, Plaintiff is entitled to recover his actual damages, including physical injuries as well as intangible injuries including humiliation, shame, fright, and mental anguish.  Plaintiff is also entitled, and hereby seeks, exemplary damages for the wrongful detention, arrest, and false imprisonment.  When the police officers of Mission Police Department wrongfully entered plaintiff's home and wrongfully detained, assaulted, arrested, and imprisoned Plaintiff, they were not acting in good faith in the performance of their discretionary duties. The wanton and oppressive actions of the police officers were not within their discretionary authority and those actions violated clearly established law.

28. <u>Deprivation of Rights Under State Law.</u>  Plaintiff would show that each of the police officers deprived Plaintiff of his rights under state law.  Those rights include, but are not limited to, the right to be free from bodily harm and assault, the right to peacefully possess his property, the right to be free of trespass, and the right to his liberty free from government actions in violation of the laws of the State of Texas. The provisions of the Texas Code of Criminal Procedure  sets strict limits on when police officers may execute a warrantless arrest.  Plaintiff would show that the police officers of the Mission Police Department did not act in good faith in making a warrantless entry into Plaintiff's home, did not act in good faith in making the warrantless arrest of Plaintiff, did not act in

9

good faith utilizing excessive force in making the arrest, did not exercise good faith by assaulting Plaintiff subsequent to his being placed in hand-cuffs.  Plaintiff would show that the actions of the police offices of the Mission Police Department on or about December 20, 2011, violated the standard of "objective legal reasonableness".  The police officers did not exercise good faith in the execution of their discretionary duties.  The wanton and oppressive actions of the police officers were not within their discretionary authority and those actions violated clearly established law.

VII

<u>COUNT 3</u>

Federal Action Against Former Police Chief Leo Longoria

29. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs. Count 3 is raised against former Mission Police Chief Leo Longoria.

30. At all times relevant to this complaint, the Mission Police Officers involved in the incident of December 20, 2011, were acting under the direction and control of former Mission Police Chief, Leo Longoria.

31. Defendant, former Mission Police Chief Leo Longoria established policies, practices, and customs which resulted in the incidents made the basis of the present claim.  Former Mission Police Chief, Leo Longoria failed to train, supervise, control and discipline the police officers, including, but not limited to: (1) failing to establish and enforce internal protocols for handling unauthorized entry, detention, and arrest; (2) failing to establish, implement, and enforce accepted standards for reducing the risk and injury to citizens of City of Mission during arrest, including policies regarding excessive use of force; (3) failing to establish, implement, and enforce accepted standards for control of suspects subsequent to arrest, including policies regarding excessive use of force; and (4) failing to establish, implement, and enforce accepted standards for the use of force against

10

hand-cuffed suspects subsequent to arrest, including policies to prevent the assault of suspects or other persons in handcuffs and under detention.

32. Defendant, former Mission Police Chief Leo Longoria failed to train, supervise, control and discipline the officers and was deliberately indifferent to the rights of the Plaintiff.  The actions and inactions of this Defendant were so shocking to the conscience as to constitute arbitrary government conduct actionable under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

33. Defendants, former Mission Police Chief Leo Longoria had knowledge or, had he diligently exercised his duties to instruct, train, supervise, control and discipline on a continuing basis, should have had knowledge that the police officers of the Mission Police Department lack the experience and skills to safely handle situations such of that which occurred on or about December 20, 2011. Defendant, former Mission Police Chief Leo Longoria, had the power to prevent or aid in preventing unsafe police actions, intentional misconduct by police officers, warrantless and unlawful entry into homes, warrantless and unlawful detention and arrest by police officers, and brutality and assault by police officers.  The failure of former Mission Police Chief, Leo Longoria to prevent or aid in preventing the actions set forth above was committed knowingly and recklessly, and constitutes deliberate indifference and callous disregard to Plaintiff's rights.

34. Defendant, former Mission Police Chief, Leo Longoria, directly or indirectly, under the color of law, approved or ratified the unlawful, deliberate, malicious, reckless and wanton conduct of the Mission Police Officers involved in the incident made the basis of the present lawsuit.

35. As a direct and proximate cause of the actions of Defendant, former Mission Police Chief Leo Longoria, as set forth in the foregoing paragraphs, Plaintiff suffered physical injury, loss of income, medical damages, and severe mental anguish in connection with the deprivation of his

constitutional and statutory rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

36. After Mr. Snider had been handcuffed and was being taken out of the home, Police Officer Omar Diaz de Villegas struck Mr. Snider in the face with a closed fist.  (Report of Officer Omar Diaz de Villegas, and deposition of Officer Omar Diaz de Villegas, page 18, lines 6-9).  Despite being questioned about the use of a closed fist strike to the face of a handcuffed prisoner, the supervisors of the Mission Police Department did not initiate any disciplinary procedures whatsoever.  (Deposition transcript of Officer Omar Diaz de Villegas page 21, line 4 through page 23, line 10).

37.  Officer Omar Diaz de Villegas has testified that there are alternatives which can be used to restrain a handcuffed person other than a closed fist blow to the face.  (Deposition transcript of Officer Omar Diaz de Villegas page 25, lines 10-12).  Officer Omar Diaz de Villegas has testified that it is the consensus among the officers of the Mission Police Department that a closed fist strike to the face of a handcuffed suspect is appropriate.  (Deposition transcript of Officer Omar Diaz de Villegas page 29, lines 7-17).  Officer Omar Diaz de Villegas has testified that under the policies, procedures and training of the Mission Police Department, using a closed fist strike to Mr. Snider, after Mr. Snider had been handcuffed was appropriate.  (Deposition transcript of Officer Omar Diaz de Villegas page 30, line 18 through page 31, line 11).

38. Sergeant Catarino Sanchez of the Mission Police Department has testified that pursuant to the policies and procedures of the Mission Police Department, there is nothing wrong with an officer striking a handcuffed suspect in the face.  (Deposition transcript of Sergeant Catarino Sanchez page 8, lines 22-25).  Sergeant Sanchez has further testified that there is nothing in the policies and procedures of the Mission Police Department which prohibits the striking of a handcuffed suspect in the face.  (Deposition transcript of Sergeant Catarino Sanchez page 9, lines 4-6).

Sergeant Catarino Sanchez has further testified that the actions of Officer Omar Diaz de Villegas were in compliance with the policies and procedures of the Mission Police Department and that the actions of Officer Omar Diaz de Villegas were sanctioned by the Mission Police Department.

39. Sergeant Catarino Sanchez testified that the actions of Officer Omar Diaz de Villegas were approved by him in his capacity as a supervising officer of the Mission Police Department. Sergeant Catarino Sanchez further testified that he approved of those actions and that those actions were within the policies of the Mission Police Department. (Deposition transcript of Sergeant Catarino Sanchez page 13, line 20 through page 15, line 6).

40. There is no policy within the Mission Police Department that requires an officer to contact a supervisor prior to making an entry into a residence under a claim of "exigent circumstances". The department has placed the decision on whether to enter the residence under any such claimed circumstances 100 percent under the discretion of the individual officer. (Deposition transcript of Sergeant Teodoro Rodriguez page 31, lines 1-18).

41. As part of the training of their police officers, the City of Mission provides the officers with a Department General Manual as well as Employee Rules and Regulations. Despite the fact that these materials are distributed to employees, there is no requirement that the employees read the manual, the rules, or the regulations. The Mission Police Officers receive no training with regard to what is prohibited and what is not prohibited according to the manual. There is no requirement that the employees of the Mission Police Department be familiar with the provisions of the manual. (Deposition transcript of Charles Lopez page 27, line 6 through page 29, line 9).

42. There is no requirement that officers with the Mission Police Department contact a supervisor prior to making a warrantless entry into a home. (Deposition transcript of Sergeant Catarino Sanchez page 11, lines 2-6). The policies and procedures of the Mission Police Department allow the

striking of a handcuffed suspect in the face with a closed fist.  (Deposition transcript of Catarino Sanchez page 8, line 4 through page 9, line 6, page 13, line 20 through page 15, page 6).

43. The testimony set forth above establishes that the policies, practices, and customs of the Mission Police Department, under the leadership of Former Police Chief Leo Longoria, caused the plaintiff to be subjected to a deprivation of his constitutional rights.

VIII

COUNT 4

Federal Action Against City of Mission

44. Plaintiff incorporates by reference each of the allegations set forth in the foregoing paragraphs. Count 4 is raised against Defendant, City of Mission only.  Defendant is liable under 42 USC §1983 for the deprivation of Plaintiff's civil rights without due process of law.

45.  Defendant, City of Mission, has filed Affidavits with the Court stating that the final policy maker for the City of Mission is its City Council. The Mission Police Department "General Manual" indicates that the final policy maker is either the Chief of Police or, the City Manager, or both.  Page 78 of the manual indicates that "the highest ranking supervisor of the department on duty is charge of all personnel, regardless of which division they may be assigned".  Page 9 of the manual gives both the Chief of Police and City Manager authority to determine what conduct is considered to be of serious, severe and/or of an emergency nature.  That provision also grants authority to both the Chief of Police and the City Manager to immediately terminate employees.

46. The City of Mission, acting through its former Mission Police Chief, City Manager and City Council, established policies, practices, and customs which  caused the Plaintiff to be subjected to a deprivation of his constitutional rights.  The policies, practices and customs of the City of Mission include inadequate training, reckless disregard for human safety, conscious indifference,

acceptance and ratification of officer misconduct, and failure to enforce the written policies of the Mission Police Department.

47. Plaintiff would show that the minimum state mandated training received by the police officers of the Mission Police Department was inadequate. Plaintiff would further show that, at the time of the incident made the basis of the present claim, there were at least 5 officers of the Mission Police Department participating in the wrongful actions described above. Repeated acts of abuse, in a single incident, involving several officers, tend to prove a disposition to disregard human rights and safety. The actions of so many officers, even on a single night may, in and of itself, establish police policy or custom, even in the absence of any prior incidents. *Borger* at 171.

48. Plaintiff would show that the disposition of the City's policy makers may be inferred from their conduct after the events which give rise to Plaintiff's claims herein. There were no reprimands, no discharges, and no admissions of error following the events of December 20, 2011. If prior policy had been violated, or if the officer's conduct on December 20, 2011, was not acceptable to the Police Chief, the City Manager, and the City Council, changes would have been made. The actions and inactions of the Police Chief, City Manager, and City Council following the events of December 20, 2011 are sufficient to establish the City's policy, practice, and customs in relation to those events. See *Borger* at 171.

49. Defendant, City of Mission established policies, practices, and customs which resulted in the events made the basis of the present claim. In addition to those stated above, the polices, practices, and customs include, but are not limited to: (1) failing to establish and enforce internal protocols for handling unauthorized entry, detention, and arrest; (2) failing to establish, implement, and enforce accepted standards for reducing the risk and injury to citizens of City of Mission during arrest, including policies regarding excessive use of force; (3) failing to establish, implement, and enforce accepted standards for control of suspects subsequent to arrest, including policies

regarding excessive use of force; and (4) failing to establish, implement, and enforce accepted standards for the use of force against hand-cuffed suspects subsequent to arrest, including policies to prevent the assault of suspects or other persons in handcuffs and under detention.

50. Defendant, City of Mission failed to train, supervise, control and discipline its officers and was deliberately indifferent to the rights of the Plaintiff.  The actions and inactions of these Defendants were shocking to the conscience as to constitute arbitrary government conduct actionable under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

51. Defendant, City of Mission had knowledge or, had they diligently exercised their duties to instruct, train, supervise, control and discipline on a continuing basis, should have had knowledge that the police officers of the Mission Police Department lack the experience and skills to safely handle situations such as that which occurred on or about December 20, 2011.  Defendant, City of Mission has the power to prevent or aid in preventing unsafe police actions, intentional misconduct by police officers, warrantless and unlawful entry into homes, warrantless and unlawful detention and arrest by police officers, and brutality and assault by police officers.  The failure the City of Mission, to prevent or aid in preventing the actions set forth above were committed knowingly, recklessly, and constitute deliberate indifference and callous disregard to Plaintiff's rights.

52. Defendant, the City of Mission, directly or indirectly, under the color of law, approved or ratified the unlawful, deliberate, malicious, reckless and wanton conduct of the Mission Police Officers involved in the incident made the basis of the present lawsuit.

53. As a direct and proximate cause of the actions of Defendant, the City of Mission, as set forth in the foregoing paragraphs, Plaintiff suffered physical injury, loss of income, medical damages, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

16

54. After Mr. Snider had been handcuffed and was being taken out of the home, Police Officer Omar Diaz de Villegas struck Mr. Snider in the face with a closed fist.  (Report of Officer Omar Diaz de Villegas, and deposition of Officer Omar Diaz de Villegas, page 18, lines 6-9).  Despite being questioned about the use of a closed fist strike to the face of a handcuffed prisoner, the supervisors of the Mission Police Department did not initiate any disciplinary procedures whatsoever.  (Deposition transcript of Officer Omar Diaz de Villegas page 21, line 4 through page 23, line 10).

55.  Officer Omar Diaz de Villegas has testified that there are alternatives which can be used to restrain a handcuffed person other than a closed fist blow to the face.  (Deposition transcript of Officer Omar Diaz de Villegas page 25, lines 10-12).  Officer Omar Diaz de Villegas has further testified that it is the consensus among the officers of the Mission Police Department that a closed fist strike to the face of a handcuffed suspect is appropriate.  (Deposition transcript of Officer Omar Diaz de Villegas page 29, lines 7-17).  Officer Omar Diaz de Villegas has also testified that under the policies, procedures and training of the Mission Police Department using a closed fist strike to Mr. Snider, after Mr. Snider had been handcuffed was appropriate.  (Deposition transcript of Officer Omar Diaz de Villegas page 30, line 18 through page 31, line 11).

56.  Sergeant Catarino Sanchez of the Mission Police Department has testified that pursuant to the policies and procedures of the Mission Police Department, there is nothing wrong with an officer striking a handcuffed suspect in the face.  (Deposition transcript of Sergeant Catarino Sanchez page 8, lines 22-25).  Sergeant Sanchez has further testified that there is nothing in the policies and procedures of the Mission Police Department which prohibits the striking of a handcuffed suspect in the face.  (Deposition transcript of Sergeant Catarino Sanchez page 9, lines 4-6).

57. Sergeant Catarino Sanchez has further testified that the actions of Officer Omar Diaz de Villegas were in compliance with the policies and procedures of the Mission Police Department and that the

actions of Officer Omar Diaz de Villegas were sanctioned by the Mission Police Department. Sergeant Catarino Sanchez testified that the actions of Officer Omar Diaz de Villegas were approved by him in his capacity as a supervising officer of the Mission Police Department. Sergeant Catarino Sanchez further testified that he approved of those actions and that those actions were within the policies of the Mission Police Department.  (Deposition transcript of Sergeant Catarino Sanchez page 13, line 20 through page 15, line 6).

58. There is no policy within the City of Mission that requires an officer to contact a supervisor prior to making an entry into a residence under a claim of "exigent circumstances". The department has placed the decision on whether to enter the residence under any such claimed circumstances 100 percent under the discretion of the individual officer.  (Deposition transcript of Sergeant Teodoro Rodriguez page 31, lines 1-18).

59.  As part of the training of their police officers, the City of Mission provides those officers with a Department General Manual as well as Employee Rules and Regulations.  Despite the fact that these materials are distributed to employees, there is no requirement that the employees read the manual, the rules, or the regulations. The Mission Police Officers receive no training with regard to what is prohibited and what is not prohibited according to the manual.  There is no requirement that the employees of the Mission Police Department be familiar with the provisions of the manual. (Deposition transcript of Charles Lopez page 27, line 6 through page 29, line 9).

60. There is no requirement that officers with the Mission Police Department contact a supervisor prior to making a warrantless entry into a home.  (Deposition transcript of Sergeant Catarino Sanchez page 11, lines 2-6).  The policies and procedures of the Mission Police Department allow the striking of a handcuffed suspect in the face with a closed fist.  (Deposition transcript of Catarino Sanchez page 8, line 4 through page 9, line 6, page 13, line 20 through page 15, page 6).

18

IX

COUNT 5

State claims against the City of Mission

61. Plaintiff asserts each of the claims set forth in Count 5 of the complaint as an alternative statement of a claim pursuant to FRCP 8(d).  Count 5 is raised against the City of Mission only.

62. The officers and former officers of the Mission P.D. were negligent, proximately causing the wrongful detention, warrantless arrest, personal injuries, and wrongful incarceration of Plaintiff.  To the extent that the City of Mission is a governmental unit, immunity has been waived for its negligent conduct.  Defendant, City of Mission, has waived immunity and is liable to Plaintiff pursuant to Tex. Civ. Prac. Code §101.021 which provide as follows: (1) a governmental unit in the State is liable for (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, if it were a private person, be liable to the claimant according to Texas law.

63. The wrongful actions committed against Plaintiff arose from the use of tangible personal property, including, but not limited to, canisters of pepper spray, hand-cuffs, and other equipment utilized by the Mission Police Department, making Defendant, City of Mission, liable for Defendants' negligence and negligence per se.

64. Alternatively, if the conduct of the police officers and former police officers of the Mission Police Department are found to be intentional torts, the City is still liable under the Texas Tort Claims Act for its negligence in the implementation of policies which would have prevented those acts by its police officers and former police officers.

65. Although a governmental unit is immune from claims arising of intentional torts, the mere intermingling of intentional torts with the negligence of a governmental unit does not render the

governmental unit immune. *Young v. Dimmitt, 787 S.W.2d 50, 51 (Tex. 1990); Tex. Dep't of Mental Health & Mental Retardation v. Petty, 848 S.W.2d 680, 684 (Tex. 1992).*

66. It is undisputed that the Mission Police Officers utilized Pepper (OC) Spray and handcuffs in effectuating their arrest of Plaintiff.  The attached Mission Police Department General Manual evidences that the City formulated policies which, if properly implemented, would have prevented the incident made the basis of the present suit.  A governmental unit waives immunity when it negligently implements its policies.  If an officer or employee acts negligently in carrying out the policy, the Texas Tort Claims Act waives sovereign immunity from suit.  *Ramos v. Texas DPS, 35 S.W.3d 723, 733 (Tex. App. – Houston [1st Dist.] 2000, pet. Denied).  City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995).  State v. Terrell, 588 S.W.2d 784 (Tex. 1979).*

67. The deposition testimony of Officer Charles Lopez evidences that, even though the Mission Police Department General Manual is given to police officers, they are not required to read it or familiarize themselves with it.  He further testified that they are not trained on the policies and procedures set forth in the manual.  The manual, portions of which have previously been filed with the court, deals with making arrests, entering premises, and treatment of citizens.

68. The City of Missions negligence in the implementation of its policies waives its sovereign immunity from suit when its employees negligently carry out those policies.

69. Plaintiff hereby seeks all damages to which he may be entitled under the provisions of Texas Tort Claims Act.

X
DAMAGES

70. Plaintiff seeks recovery of all damages which he may be entitled under Texas and Federal law. Plaintiff seeks to recover for both his physical injuries, medical damages, mental pain and anguish,

loss of income, pecuniary losses.  All of these injuries have occurred in the past and will continue into the future.

XI

OTHER DAMAGES

(Exemplary Damages)

71. Pursuant to Article 16 §26 of the Texas Constitution, Chapter 41 of the Texas Civil Practice and Remedies Code,  42 U.S.C. Section 1983, and all other applicable common law and statutory provisions, Plaintiff seeks recovery of exemplary damages for the willful acts and omissions, malice or gross negligence, deliberate indifference, and shocking conduct of each of the Defendants. Defendants were consciously indifferent to the rights and welfare of Plaintiff.  Defendants' shocking, deliberate, and willful acts and omissions and gross negligence of Defendants' duties placed Plaintiff in an extreme degree of risks which ultimately resulted in severe bodily injuries and wrongful incarceration.  Any shocking conduct, whether deliberately indifferent and/or maliciously exhibited by Defendants can only be remedied by an award of exemplary or punitive damages.

72. Plaintiff seeks recovery of punitive/exemplary damages pursuant to Defendants' reckless or callous disregard of, or indifference to, the rights of Plaintiff under the Constitutions of the United States and The State of Texas, State law, and Federal law, including 42.U.S.C Section 1983.  *Smith v. Wade,* 103 S.Ct. 1625 (1983).

XII

ATTORNEY FEES

73. Plaintiff requests attorney fees pursuant to any applicable law and in accordance with the award of exemplary damages requested in the previous paragraphs.  Plaintiff further seeks recovery, pursuant to the Civil Rights Attorney's Fees Award at, 42 U.S.C. §1988, which provides that

prevailing parties in actions brought pursuant to 42 U.S.C. section 1983 are entitled to recover of attorney fees and costs.

XIII

COSTS AND INTERESTS

74. Pursuant to the applicable statutes, including Chapter 101 of the Texas Civil Practice and Remedies Code and 42 U.S.C. §1983 and 1988, Plaintiff seeks recovery of all of his court costs and pre-judgment and post-judgment interests at the highest rate allowed by law.  Defendant, City of Mission, had actual notice of the warrantless entry, wrongful detention, brutalization, wrongful arrest, and wrongful incarceration of Plaintiff as the police officers involved for the wrongful conduct were witnesses to such conduct.

XIII

JURY TRIAL

75. Plaintiff demands trial by jury.

XIV

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer in this cause, and that upon final trial hereof, Plaintiff recover judgment against Defendants, jointly and severally, for actual and punitive damages in amounts within the jurisdictional limits of this Court, for all damages respectively sustained by Plaintiff as set forth above, together with pre-judgment interest thereon at the maximum legal or equitable rate; for post judgment interest on the amount of judgment at maximum rate allowed by law; for recovery of costs of court; attorney fees, and for such other and further relief, at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

_____/s/_____

Rodney W. Sipes
State Bar No. 18349600
SIPES & ASSOCIATES, PLLC
3102 S McColl Rd., PMB
(956) 381-4700
(956) 381-4701 fax

ATTORNEY FOR PLAINTIFF,
KENNETH JOHN SNIDER

CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2013, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court.

The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented to accept this Notice as service of this document by electronic means:

Ysmael D. Fonseca
WILLETTE & GUERRA, LLP
10123 N. 10th Street
McAllen, Texas  78504

_____/s/_____

Rodney S. Sipes